IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICROTHIN.COM, INC., | ) | |
| | ) | |
| Plaintiff, Counter-Defendant, | ) | No. 06 C 1522 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| SILICONEZONE USA, LLC | ) | |
| | ) | |
| Defendant, Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL O'MALLEY, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Microthin.com, Inc. ("Plaintiff"), filed a complaint against Siliconezone USA, LLC ("Defendant"), for patent infringement under 35 U.S.C. § 271 *et seq*. In response, Defendant filed six affirmative defenses and five counterclaims.[1] This opinion addresses four separate motions. First, Plaintiff moves to dismiss Defendant's Amended Second, Third, Fourth and Fifth Counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6). Second, Counter-Defendant Daniel O'Malley ("O'Malley") moves to dismiss the two counterclaims implicating him, the Second and Fifth Counterclaims, pursuant to Rule 12(b)(1) and Rule 21. Third, Plaintiff moves to dismiss Defendant's Amended First Counterclaim, or in the alternative for a more

---

[1] Defendant's Affirmative Defenses are as follows: (i) noninfringement; (ii) invalidity; (iii) lack of damages to plaintiff; (iv) inequitable conduct; (v) unclean hands and patent misuse; and (vi) the doctrines of laches, waiver and estoppel. Defendant counterclaimed: (i) invalidity and/or unenforceability; (ii) assault and battery; (iii) trespass; (iv) breach of contract; and (v) interference with prospective business advantages.

definite statement of the claim pursuant to Rule 12(e). Fourth, Plaintiff moves pursuant to Rule 12(f) to strike Defendant's Amended Fourth, Fifth and Sixth Affirmative Defenses.

Because Defendant's Second, Third, Fourth and Fifth Counterclaims do not derive from a common nucleus of operative fact with respect to Plaintiff's patent infringement claim but do state an independent basis for jurisdiction, Plaintiff's Motion to Dismiss and O'Malley's Motion to Dismiss are denied with respect to Rule 12(b)(1), and granted in part and denied in part with respect to Rule 12(b)(6). Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaim under Rule 12(b)(6), or in the alternative require a more definite statement under Rule 12(e), is denied because Defendant alleges sufficient facts to state a claim upon which relief can be granted and to which Plaintiff can reasonably frame a response. Lastly, Plaintiff's Motion to Strike Defendant's amended Fourth, Fifth and Sixth Affirmative Defenses is denied as to the Fourth and Fifth defenses because Defendant sufficiently pleaded these defenses, and granted without prejudice as to the Sixth defense.

## **FACTS**

The following facts are taken from Plaintiff's Amended Complaint and Defendant's Amended Counterclaim and are common to all four motions. Plaintiff obtained two patents for a "Non-Slip Mat or Pad," numbers 5,942,311 ("311") and 5,977,995 ("995"), entitled (Compl. ¶ 1, ¶ 8-9.) Patent 311 issued on August 24, 1999; patent 995 issued December 7, 1999. (Compl. ¶¶ 8-9). Specifically, Plaintiff alleges that Defendant's "Kitchenzone" cutting boards infringe upon Plaintiff's 311 and 995 patents, and that Defendant has been marketing and selling, and continues to market and sell, the infringing products (*Id.* ¶ 11.)

In response, Defendant filed six affirmative defenses: (i) that Defendant's cutting boards do not infringe upon Plaintiff's patents; (ii) that Plaintiff's patents are unenforceable and invalid; (iii) that Plaintiff suffered no damages; (iv) that Plaintiff's conduct was inequitable; (v) that Plaintiff has unclean hands; and (vi) that the doctrines of laches, waiver, and estoppel bar Plaintiff's claim. Additionally, Defendant advanced five counterclaims: (i) declaration of invalidity and/or unenforceability; (ii) assault and battery; (iii) trespassing; (iv) breach of contract; and (v) interference with prospective advantages.

The events that transpired at the International Home and Housewares Show (the "Show"), which took place in Illinois in March 2006, form the basis of Defendant's counterclaims now at issue. Both Defendant and Plaintiff operated vendor booths at the Show. (Am. Answer Countercl. ¶ 32.) Defendant alleges that it attended the Show to meet retailers and potential buyers. (*Id.* ¶ 26-29.) The Show rules prohibit unauthorized entry into vendor booths and "prohibit vendors from interfering with or disrupting another vendor's personal or legitimate activities." (*Id.* ¶ 31.) Defendant claims that Plaintiff's employees "were surreptitiously going into [Defendant's] booth throughout the Show, in violation of the Show's rules, and handling and inspecting [Defendant's] products, including new and prototype products" without Defendant's permission. (*Id.* ¶¶ 35-36.) Defendant alleges that at least two of Plaintiff's employees entered Defendant's booth and made comments "about [Defendant's] alleged 'rip off' of [Plaintiff's] patent rights, in front of potential buyers." (*Id.* ¶ 37.)

In response to Plaintiff's actions, Defendant's president, Michael Karyo ("Karyo"), and Defendant's vice president of sales, Larry Cornick ("Cornick") attempted to speak with Plaintiff and "resolve the problem cordially." (*Id.* ¶ 40.) Cornick approached Plaintiff's booth first where he

3

asked to speak with O'Malley. O'Malley is Plaintiff's founder, executive vice-president, corporate secretary and principle shareholder. O'Malley shook Cornick's hand with excessive force and told him to cease infringing on Plaintiff's patents. (*Id.* ¶¶ 45-47.) Subsequently, Karyo approached Plaintiff's booth and requested to speak with O'Malley, who emerged from the booth "bumping into Karyo's chest and knocking him backward." (*Id.* ¶¶ 50-51.) O'Malley responded to Karyo's inquiries "by yelling 'You're ripping us off! You're ripping off our patents.'" (*Id.* ¶ 57.) Karyo responded by giving O'Malley his attorney's contact information and requesting that O'Malley direct his legal issues to Defendant's attorney. O'Malley continued to yell at Karyo as he walked away from Plaintiff's booth; Defendant contends that following this encounter, Plaintiff's employees continued to enter Defendant's booth in violation of the show rules. (*Id.* ¶¶ 62-65.) Defendant alleges that it lost potential future business that it would have obtained at the Show because of Plaintiff's and O'Malley's "interference and confrontation." (*Id.* ¶ 69.)

## DISCUSSION

**I. Motion to Dismiss Amended Second, Third, Fourth and Fifth Counterclaims.**

Plaintiff alleges that Defendant's Amended Second, Third, Fourth and Fifth Counterclaims should be dismissed pursuant to Rule 12(b)(6) and Rule 12(b)(1). Plaintiff challenges both the sufficiency of pleading and the Court's subject matter jurisdiction over the Counterclaims. FED. R. CIV. P. 12(b)(1), 12 (b)(6). When examining Rule 12(b)(6) and Rule 12(b)(1) motions to dismiss, "the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (giving the standard of review for Rule 12(b)(1) motions); *see also Royal Towing, Inc. v. City of Harvey*, 350 F. Supp.2d 750, 752 (N.D. Ill. 2004) (when challenging the facial

sufficiency of a complaint, dismissal via Rule 12(b)(1) motion "mirrors the standard applied for 12(b)(6)").

Because the Motion to Dismiss questions subject matter jurisdiction, subject matter jurisdiction must be addressed first. *See Cook v. Winfrey*, 141 F.3d 322, 324 (7th Cir. 1998) (stating "[i]t is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action"); *Angsten v. Blameuser*, 2005 WL 3095513, * 2 (N.D. Ill. Nov. 16, 2005) (commenting that subject matter jurisdiction is the first consideration in every case). Once a court determines that it has jurisdiction over claims, it may then proceed to test the sufficiency of the claim's pleadings pursuant to Rule 12(b)(6). *Id.*

This Court exercises original jurisdiction over Plaintiff's allegations because they arise under federal patent law. 28 U.S.C. § 1331, § 1338. However, Defendant's Second, Third, Fourth and Fifth Counterclaims arise under Illinois law. Therefore, the issue of whether the Court has jurisdiction over these Counterclaims hinges upon whether supplemental jurisdiction is proper under 28 U.S.C. §1367. If it does not, then the Court must decide first whether Defendant has an alternate basis for federal jurisdiction, and if so, whether the Court will permit the state law claims to remain.

### A. Supplemental Jurisdiction Under § 1367: Common Nucleus of Operative Fact

Defendant's Second, Third, Fourth and Fifth Counterclaims do not fall within the supplemental jurisdiction of the Court. Congress codified supplemental jurisdiction at 28 U.S.C. §1367, which states "in any civil action which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy

under Article III." 28 U.S.C. § 1367(a). In order for state claims to be within the court's supplemental jurisdiction, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (stating that a plaintiff's claims must be "such that he would ordinarily be expected to try them all in one judicial proceeding").

Courts examine the underlying operative facts of the federal and state claims to determine whether they share common factual connections. *See Eager v. Commonwealth Edison Co.,* 187 F. Supp. 2d 1033, 1040 (N.D. Ill. 2002). Although "[a] loose factual connection" is usually enough to satisfy the requirements of supplemental jurisdiction, "the facts at issue must be both 'common' and 'operative.'" *Angsten*, 2005 WL 3095513, at * 3, *see also G.M. Harston Const. v. City of Chi.*, 2006 WL 642641, * 2 (N.D. Ill. March 3, 2006) (discussing procedure for analyzing supplemental jurisdiction). Generally, it is insufficient that the state and federal claims share a factual background. *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005). Stated alternatively, courts look to whether the state claims can be resolved or dismissed without affecting the federal claims. *Eager,* 187 F. Supp. 2d at 1040.

A comparison of the operative facts required for the federal and state claims in this case reveals that these claims do not arise out of a common nucleus of operative facts. Plaintiff's Complaint confers original jurisdiction on this Court through 28 U.S.C. § 1331 and 28 U.S.C. § 1338. *See* 28 U.S.C. § 1331 (giving district courts jurisdiction over all claims arising under the laws of the United States); 28 U.S.C. § 1338 (conferring jurisdiction to district courts over any civil action arising under federal patent law); (Compl. ¶ 6); *see also Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (stating that "linguistic consistency" requires the

6

application of the same test to determine whether a case arises under § 1338(a) and § 1331). Direct patent infringement "consists of making, using, offering to sell or selling the invention defined by claims of the patents." *Kenall Mfg. Co. v. Genlyte Thomas Group LLC*, 439 F. Supp. 2d 854, 864-65 (N.D. Ill. 2006) *citing Hoechst-Roussel Pharm., Inc. v. Lehman*, 109 F.3d 756, 759 (Fed. Cir. 1997). Plaintiff alleges that Defendant willfully infringed upon Plaintiff's 311 and 995 patent's by manufacturing, importing, offering for sale, selling, and promoting "Kitchenzone" cutting boards. (Compl. ¶ 12).

By contrast, the operative facts supporting Defendant's counterclaims revolve around torts committed at the Show and only the Show. While the two competing products were allegedly marketed at the show, the tortious actions between the employees of the two companies have no impact on whether or not Defendant's product infringes on Plaintiff's patented product. In other words, the resolution of the patent infringement claim will have no effect on the resolution of the state law claims. *See General Auto Service Station v. City of Chi.*, 2004 WL 442636, * 12 (N.D. Ill. March 9, 2004) (finding no supplemental jurisdiction because resolution of the federal claim would have no effect on the state claim). Though the operative facts of the counterclaims may have transpired because the parties were emotional about the patent dispute, the operative facts of the patent dispute and the Show disputes are not common enough to support the extension of supplemental jurisdiction. *See Am. Dev., Inc. v. Int'l Union of Operating Eng'r*, 1998 WL 246455, *3 (N.D. Ill. Apr. 29, 1998) (holding that supplemental jurisdiction "requires a more rigorous factual connection than a claim that events roughly transpired over the same period of time, in the same locale and tenuously relate to the same ongoing . . . dispute"). Defendant cannot show that these

state law claims should be joined pursuant to 28 U.S.C. § 1367, because the facts underlying the counterclaims do not share a common nucleus of operative fact with the patent claims.

### B. Independent Basis for Jurisdiction.

If the federal claims and the state law counterclaims do not derive from a common nucleus of operative fact, the state law claim is not a compulsory claim that must be tried in this proceeding pursuant to Rule 13(a). As a permissive counterclaim, it can only remain in federal court with an independent basis for jurisdiction. *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 961 (7th Cir. 1982) (affirming dismissal of permissive state law counterclaim). Defendant argues that the Counterclaims have an independent basis for jurisdiction in diversity. 28 U.S.C. § 1332 confers jurisdiction on district courts to hear "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—citizens of different states." 28 U.S.C. § 1332. If diversity jurisdiction exists as an independent basis for this Court to hear the Counterclaims, then - assuming the Counterclaims are validly pleaded on their merits - the Counterclaims can remain before this Court.

Neither Plaintiff nor Defendant denies that they are citizens of different states for purposes of diversity jurisdiction. Plaintiff is a corporation organized under Illinois law with its principle place of business in Illinois. (Compl. ¶ 6.) Defendant is a New York limited liability company with its principle place of business in New York. (Am. Answer Countercl. ¶ 3.) However, Plaintiff contends that Defendant's Amended Second, Third, Fourth and Fifth Counterclaims should be dismissed because the amount in controversy "does not exceed $75,000." (Mot. Dismiss Amend. Countercl. 2.)

Generally, the sum alleged by the plaintiff controls if the claim is made in good faith. *Sears, Roebuck and Co. v. Am. Mut. Liability Ins. Co.*, 372 F.2d 435, 439 (7th Cir. 1967). Once the amount is challenged, the plaintiff bears the burden of proving the jurisdictional amount, but the plaintiff "must be given the benefit of any facts he could conceivably prove in support of his allegations." *Azimi v. Ford Motor Co.*, 977 F. Supp. 847, 850 (N.D. Ill. 1996). In order to prevail on a challenge to the amount allegation, it must appear with legal certainty that the claim is for less than the jurisdictional amount. *Id.*

Defendant has alleged that the damages from the four state law Counterclaims taken together exceed $75,000. Defendant did not assert separate damages for each Counterclaim. Defendant requests compensatory and punitive damages for its loss of "expected sales, business relationships, and goodwill resulting from [Plaintiff's] assault, battery, breach of contract, trespass and interference with prospective advantages, estimated at a minimum of $150,000 per lost business relationship." (Am. Answer Countercl. ¶ E). Because Plaintiff has also moved to dismiss each of the counterclaims pursuant to Rule 12(b)(6), and because only some of these claims have a likelihood of damages in excess of $75,000, the Court addresses the merits of Plaintiff's 12(b)(6) Motion before deciding whether Defendant's claims allege damages in excess of $75,000.

**C. Failure to State a Claim Pursuant to Rule 12(b)(6)**

Plaintiff challenges the pleading standard of each of Defendant's four state law Counterclaims. Because Defendant cannot allege that a corporation is the victim of a battery, the Second Counterclaim is dismissed. Because Defendant cannot show that it was the third-party beneficiary of the contract between Plaintiff and the International Home Association, the Fourth Counterclaim is dismissed.

### 1. Assault and Battery

Defendant's Counterclaim of assault and battery fails to state a claim upon which relief can be granted. Illinois common law defines battery as "willful touching of the person of another or a successful attempt to commit violence upon the person of another." *Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004), *citing* 720 ILCS 5/12-1(a). Under Illinois law, an assault is conduct that puts another in reasonable apprehension of a battery. *See Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.*, 623 N.E.2d 1036, 1039 (Ill. App. Ct. 1993). However, in Illinois "there can be no tort of assault against a corporation." *Ntron Int'l Sales Co. v. Carroll*, 714 F. Supp. 335, 339 (N.D. Ill. 1989) (stating "it is obvious to this court that an assault can not be perpetrated upon a corporation, and the lack of any authority in Illinois to the contrary supports this position.").

Defendant alleges in the Second Counterclaim that Plaintiff, through its officers, principals and Mr. O'Malley "willfully, wantonly, and with intent and desire to cause a harmful result, assaulted and battered [Defendant's] employees by multiple acts at the [Show]." (Am. Answer Countercl. ¶ 70.) The employees of Defendant, however, are not Counterclaimants in this suit. Because there is no tort of assault against a corporation, Defendant's Second Counterclaim for assault and battery is dismissed for failure to state a claim upon which relief can be granted.

### 2. Trespass

Defendant's Third Counterclaim asserts that Plaintiff trespassed onto Defendant's property and chattel. Under Illinois law, "trespass is an intentional invasion of the exclusive possession" of another, and trespass to chattel requires intentional dispossession of another's chattel or using or interfering with a chattel possessed by another. *Freese v. Buoy,* 576 N.E.2d 1176, 1182 (Ill.App. Ct. 1991), *citing* RESTATEMENT (SECOND) OF TORTS § 217. Defendant supports its allegations of

10

trespassing by asserting a privacy interest in the Show booth; asserting that Plaintiff repeated unauthorized entrance into Defendant's private booth; and asserting that Plaintiff handled Defendant's property without permission. (Am. Answer Countercl. ¶ 87.) Because Defendant has properly pleaded a state law claim of trespass, Defendant's Third Counterclaim survives.

### 3. Breach of Contract

Defendant's Fourth Counterclaim, breach of contract, fails to state a claim upon which relief can be granted. A person who is not a party to a contract "may nevertheless sue based on the contract if that person is directly benefitted by the contract." *Paukovitz v. Imperial Homes, Inc.*, 649 N.E.2d 473, 475 (Ill. App. Ct. 1995). The parties to the contract must intend that the contract benefit the third party. *See Ball Corp. v. Bohlin Building Corp.*, 543 N.E.2d 106, 107 (Ill. App. Ct. 1989). An incidental benefit is not a sufficient basis for a breach of contract claim by a third-party. *See Paukovitz*, 649 N.E.2d at 475. "The promisor's intention must be evidenced by an express provision in the contract identifying the third-party beneficiary." *Wheeling Trust & Savings Bank v. Tremco Incorp.*, 505 N.E.2d 1045, 1048 (Ill. App. Ct. 1987).

Defendant contends that it is a third-party beneficiary to the contract between Plaintiff and the Show, and that Plaintiff is liable to Defendant because Plaintiff breached its contract with the Show. Specifically, Defendant alleges that Plaintiff breached provisions forbidding unauthorized entry into another vendor's booth, prohibiting interference with a vendor's "personnel or legitimate activities," and requiring vendors to "[b]e considerate of other exhibitors." (Am. Answer Countercl. ¶ 96.) Taking Defendant's allegations of Plaintiff's conduct at the Show as true, the allegations establish that Plaintiff breached its contract with the Show. However, Defendant never alleges that it is "expressly named in the contract" as a third party beneficiary. *See Ball Corp*, 543 N.E.2d at 107.

11

Because Defendant has failed to plead that it can be a third-party beneficiary as a matter of law, the Fourth Counterclaim fails to state a claim upon which relief can be granted.

### 4. Tortious Interference with Business Expectancy

Finally, Defendant asserts in its Fifth Counterclaim that Plaintiff and O'Malley interfered with Defendant's prospective business advantages. In Illinois, tortuous interference with prospective advantage requires a showing of four elements: "(1) reasonable expectation of a valid business relationship or economic advantage; (2) the defendant's knowledge of the expectancy; (3) purposeful interference by the defendant that defeats the expectancy; and (4) damages to the plaintiff resulting from the interference." *Republic Tobacco, L.P. v. N. Atl. Trading Co.*, 1999 WL 261712, * 6 (N.D. Ill. April, 9, 1999), *citing Douglas Theater Corp. v. Chicago Title & Trust Co.*, 641 N.E.2d 584, 590 (Ill. App. Ct. 1994). Defendant asserts that all vendors attended the Show with the expectation of entering into new business relationships; the Show was designed to "create a high expectation of forming such business relationships." (Am. Answer Countercl. ¶ 106.) Defendant claims that "[a]s a result of [Plaintiff's] and O'Malley's forceful interference, [Defendant] lost opportunities to form business relationships that it would have otherwise formed." (*Id.* ¶ 106).

According to the facts as pleaded in the Answer and Amended Counterclaims, the Show is designed for manufacturers to form new sales relationships and one contract obtained because of the Show can earn a company between $500,000 and $750,000. Defendant has sufficiently alleged facts concerning the actions of Plaintiff's employees that, if taken as true, would constitute tortious interference with prospective business relationships.

**D. Jurisdiction over the Permissive Counterclaims in Light of Remaining Claims**

After examining the claims on their merits pursuant to Rule 12(b)(6), Defendant's Third and Fifth Counterclaims survive. Because the alleged damages from trespass and tortious interference claim have a reasonable likelihood of exceeding $75,000, Defendant has provided an independent basis for jurisdiction for the Third and Fifth Counterclaims, and Plaintiff's Motion to Dismiss with respect to those two claims is denied.

**E. The Claim against Mr. O'Malley**

Mr. O'Malley has filed a separate motion to dismiss the Second and Fifth Counterclaims for the same reasons raised by Plaintiff, and for the additional reason that Defendant did not request permission to join Mr. O'Malley pursuant to Rule 21. The Second Counterclaim, for assault and battery, is dismissed with respect to O'Malley for the same reasons as apply to Plaintiff. The Fifth Counterclaim does not clearly state that it is raised against O'Malley, or to what extent Defendant alleges facts against O'Malley personally, or O'Malley as an employee of Plaintiff. Therefore, O'Malley's Motion to Dismiss is granted without prejudice to Defendant to replead. Defendant shall inform the Court if it voluntarily dismisses O'Malley in light of the Court's ruling with respect to the assault and battery claim.

**II. Motion to Dismiss or Define Amended First Counterclaim**

Plaintiff has moved to dismiss Defendant's Amended First Counterclaim pursuant to Rule 12(b)(6) or, in the alternative, to have a more definite statement pursuant to Rule 12(e). Defendant's First Counterclaim, which asserts that the 311 and 995 patents are invalid and/or unenforceable, satisfies the requirements of federal notice pleading. *See* FED. R. CIV. P. 8. Plaintiff moves to

dismiss Defendant's First Amended Counterclaim pursuant to Rule 12(b)(6) and, in the alternative, moves for a more definite statement of the counterclaim under Rule 12(e).

In reviewing a 12(b)(6) motion, the court construes all allegations in favor of the non-moving party and accepts all well-pleaded facts and allegations as true. *See Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004). Federal notice pleading only requires a short and plain statement of the claim sufficient enough to enable "the court and the defendants to understand the gravamen of the plaintiff's complaint." *Doherty v. Chicago,* 75 F.3d 318, 326 (7th Cir. 1996). Courts dismiss complaints for failure to state a claim only if it appears, beyond a reasonable doubt, that plaintiff can prove no set of facts entitling him to relief. *See Conley v. Gibson* 355 U.S. 42, 45-46 (1957).

A motion for a more definite statement under Rule 12(e) "is intended only to clear up confusion and not to replace traditional discovery." *Direct Commc'n, Inc. v. Horizon Retail Constr., Inc.*, 387 F. Supp.2d 828, 831 (N.D. Ill. 2005). Rule 12(e) motions are generally disfavored, and should only be granted "when the pleading is so unintelligible that the movant cannot draft a responsive pleading." *United States for Argyle Cut Stone Co., Inc., v. Paschen Contractors, Inc.*, 664 F. Supp. 298, 303 (N.D. Ill. 1987).

Defendant's First Amended Counterclaim withstands Plaintiff's Rule 12(b)(6) Motion to Dismiss and 12(e) request for clarification because it is sufficient enough to enable Plaintiff to understand the gravamen of Defendant's allegations and formulate a response. Defendant's First Amended Counterclaim contends that Plaintiff's 311 and 995 patents are invalid and/or unenforceable under 35 U.S.C. § 103 and § 102 because "[t]he 311 patent and the 995 patent were each anticipated by prior art." (Am. Answer Countercl. ¶ 74-76.) *See* 35 U.S.C. §§ 103, 102. Furthermore, Defendant contends that the patents are invalid and/or unenforceable because Plaintiff

failed to "appropriately describe the patented invention" as required by 35 U.S.C. § 112. (*Id.* ¶ 77.) *See* 35 U.S.C. § 112. In alleging prior art, Defendant specifically lists several patents. If the prior art renders the 311 and 995 patents ineligible for patentability or if Plaintiff's patents lack the requisite specificity, Defendant's Counterclaim of invalidity/unenforceability will succeed. Therefore, accepting Defendant's facts and allegations as true, Defendant's First Amended Counterclaim for invalidity and/or unenforceability is sufficient to survive Plaintiff's Rule 12(b)(6) Motion to Dismiss, and is not so vague or ambiguous as to require a more definite statement under Rule 12(e).

**III. Motion to Strike Amended Fourth Fifth and Sixth Affirmative Defenses.**

A court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). A Rule 12(f) motion to strike "is the appropriate remedy for the elimination of impertinent or redundant matter in any pleading and is the primary procedure for objecting to an insufficient defense." *Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Courts disfavor motions to strike affirmative defenses, and only grant these motions "if the affirmative defenses are insufficient as a matter of law or present no questions of law or fact." *MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 579 (N.D. Ill. 1999). Generally, courts apply a three part test when examining motions to strike affirmative defenses: (i) whether the issue is an appropriate affirmative defense; (ii) whether the affirmative defenses meet the pleading requirements of Rule 8 and 9 of the Federal Rules of Civil Procedure; and (iii) whether the affirmative defenses withstand a Rule 12(b)(6) analysis. *See Van Shouwen*, 782 F. Supp. at 1245 (applying the three part test). Courts will only strike affirmative

defenses "if it appears beyond a doubt that the pleader can prove no set of facts in support of his claim that would entitle him to relief." *MAN Roland*, 57 F. Supp. 2d at 579.

Plaintiff moves to strike Defendants' Fourth, Fifth, and Sixth Affirmative Defenses alleging that they do not meet the particularized pleading requirements. Defendant's Fourth and Fifth Affirmative Defenses allege inequitable conduct and unclean hands/patent misuse and therefore must be pleaded with specific elements. *Yash Raj Films v. Atl. Video*, 2004 WL 1200184, * 3 (N.D. Ill. May 28, 2004) (stating that equitable defenses such as laches, estoppel, and unclean hands must be pleaded with reference to "the specific elements required to establish the defense"). In addition, Plaintiff moves to strike Defendant's Fifth and Sixth Affirmative Defenses as untimely, because Defendant added them when it filed its Amended Answer and Counterclaim.

### A. Inequitable Conduct

In order to allege inequitable conduct, a party must assert: (1) material prior art; (2) knowledge chargeable to the patent applicant of prior art and its materiality; and (3) the applicant's failure to disclose the prior art to the Patent and Trademark Office with the intent to mislead. *See Fox v. Structural Pres. Sys.*, 922 F.2d 801, 803 (Fed. Cir. 1991) (stating that "information is material if a substantial likelihood [exists] that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent").

Defendant's amended affirmative defense alleges that: (1) knowledge of certain prior art, examples of which are listed in the amended complaint, would have been important to the patent officers considering Plaintiff's application; (ii) Plaintiff knew or should have reasonable known of the existence and materiality of the prior art; and (iii) Plaintiff, "the named inventor, and the attorneys and agents acting on behalf of them, with an intent to deceive," concealed prior art. (Am.

16

Answer Countercl. ¶ 35-37). Because Defendant properly alleges the time, place and content of the alleged misrepresentation, Defendant's affirmative defense is pled with specificity. In addition, Defendant alleges sufficient facts to withstand a 12(b)(6) analysis. Defendant sets forth facts, which if taken as true, satisfy the elements of inequitable conduct. Therefore, Plaintiff's Motion to Strike Defendant's affirmative defense of inequitable conduct is denied.

### B. Unclean Hands/Patent Misuse

The "patent misuse doctrine is an extension of the equitable doctrine of unclean hands, whereby a court of equity will not led its support to the enforcement of a patent that has been misused." *B. Braun Med., Inc. v. Abbott Lab.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997). Patent misuse alleges that the patentee impermissibly expanded the scope of its patent. *See Ropak Corp. v. Plastican, Inc.*, 2005 WL 3050625, * 1 (N.D. Ill. Nov. 14, 2005). Defendant alleges that Plaintiff attempted to unlawfully expand the scope its patents, "based on mouse pads," by attempting to enforce its patents against Defendant for its "Kitchenzone" cutting boards. (Am. Answer Compl. ¶ 46.) Additionally, Defendant contends that Plaintiff was aware that its 311 and 995 patents were "invalid, unenforceable, and/or extremely limited due to information it received." (*Id.* ¶ 39.) Defendant's allegations of unclean hands and patent misuse contain sufficient facts to satisfy the federal pleading requirements. Additionally, these facts, when taken as true, substantiate Defendant's claims of unclean hands and patent misuse, such that these defenses withstand an Rule 12(b)(6) motion to dismiss analysis.

Plaintiff also moves to strike the Fifth Affirmative Defense as untimely pled. Defendant moved for leave to file its Amended Answer and Counterclaim 6 weeks after filing its initial answer, with more than 5 months of fact discovery remaining. The Court granted Defendant leave to file the

Amended Answer. Therefore, this amendment is not untimely, and the affirmative defense may stand.

### C. Untimeliness of Unclean Hands, Laches, Waiver & Estoppel

Because laches, waiver and estoppel are equitable defenses, Defendant must also plead these affirmative defenses with particularity. *Yash Raj Films,* 2004 WL 1200184, at * 3. In Illinois the affirmative defense of estoppel arises when: "(1) a party acts; (2) another party reasonably relies on those acts; and (3) the latter party thereby changes his position for the worse." *Bobbit v. Victorian House, Inc.*, 532 F. Supp. 734, 738 (N.D. Ill. 1982) (stating that detrimental reliance must be alleged). Similarly, the doctrine of laches requires "a detrimental change that makes it inequitable to grant relief." *Id.* The doctrine of waiver requires "the intentional relinquishment of a known right." *Builders Bank v. First Bank & Trust Co. of Ill.*, 2004 WL 626827, * 6 (N.D. Ill. March 25, 2004). Courts routinely strike laches, waiver and estoppel defenses when they are insufficiently pled. *See Id.* at * 6 (stating that "[c]ourts have held time and time again that stringing together a long list of legal defenses is not sufficient to satisfy Rule 8(a)'s short and plain statement requirement").

Defendant lists the doctrines of laches, waiver and estoppel as affirmative defenses without providing any factual basis. Merely listing these doctrines as affirmative defenses without providing factual sufficiency as to their applicability does not satisfy the requirements of Rule 8. Therefore, Defendant's Sixth affirmative defense, the doctrines of laches, waiver and estoppel, is stricken without prejudice.

### **CONCLUSION**

Plaintiff's Motion to Dismiss Defendant's Amended Second, Third, Fourth and Fifth Counterclaims pursuant to Rule 12(b)(6) is granted as to the counterclaims of assault and breach of

contract, and denied as to the counterclaims of trespass and tortious interference. Because the remaining state law counterclaims have an independent basis for subject matter jurisdiction in federal court, Plaintiff's Motion to Dismiss the Counterclaims is denied as to the Third and Fifth Counterclaims. Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaim is denied. Plaintiff's Motion to Strike is denied as to Defendant's Fourth and Fifth Affirmative Defenses, and granted as to Defendant's Sixth Affirmative Defense without prejudice. Finally, O'Malley's Motion to Dismiss the counterclaims against him is granted as to the assault claim for the same reasons as apply to Defendant, and is granted without prejudice to replead with respect to the Fifth Counterclaim for tortious interference.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: November 14, 2006