IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICROTHIN.COM, INC., ) | |
| ) | Case No. 06 C 1522 |
| Plaintiff, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| SILICONEZONE USA, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Microthin.com, Inc. ("Microthin") filed suit against Defendant SiliconeZone USA, LLC ("SiliconeZone") for patent infringement under 35 U.S.C. §271 *et seq*. Specifically, Microthin claims infringement of US Patent No. 5,942,311 (the "'311 patent") in Count I and US Patent No. 5,997,995 (the "'995 patent") in Count II. SiliconeZone moved for summary judgment on both counts based upon the invalidity of the first patent claim in each of the patents. For the reasons stated, SiliconeZone's Motion for Summary Judgment is granted.

## STATEMENT OF UNDISPUTED FACTS

On July 3, 1997, Carl Scianna filed a patent application with the USPTO entitled "Non-Slip Mat or Pad." (Memorandum, Ex. F(a), Patent No. 5,942,311, at [22].) Scianna was granted Patent No. 5,942,311 ("the '311 Patent") on August 24, 1999. (Pl. 56.1 Resp. ¶ 32.) The patent summarized the invention as a "non-slip mat or pad that is much thinner and more efficient than commercially available mouse pads or mats having a foam supporting surface which is in contact with the surface of a counter or desktop of the user." Memorandum, Ex. F(a), Patent No. 5,942,311,

at 2:1-8.) At the time of issuance, Scianna assigned all rights in the '311 Patent to Microthin. (Pl. 56.1 Resp. ¶ 32.)

On December 7, 1999, the USPTO granted Patent No. 5,997,995 to Carl Scianna ("the '995 Patent"). (Pl. 56.1 Resp. ¶ 34.) The '995 Patent was a division of the application for the '311 Patent. (Memorandum, Ex. F(b), Patent No. 5,997,995, at 1:3-4.) The '995 Patent teaches a method for manufacturing a non-slip mat or pad. (Memorandum, Ex. F(b), Patent No. 5,997,995, at 5:3-4.) Possible uses for the mat or pad include "mouse pads, desk mats, change pads, placemats and coasters." (Memorandum, Ex. F(b), Patent No. 5,997,995, at 2:10-12.) At the time of issuance, Scianna assigned all rights in the '995 Patent to Microthin. (Pl. 56.1 Resp. ¶ 34.)

SiliconeZone sells housewares for kitchens, including the "KITCHENZONE" Cutting Boards. (Pl. 56.1 Resp. ¶ 3.) "KITCHENZONE" Cutting Boards are sold in sets of four cutting boards, with each board bearing a symbol to represent different categories of food, such as meat, seafood or produce. (*Id.*) On March 17, 2006, Mictrothin filed suit against SiliconeZone, claiming that SiliconeZone's "KITCHENZONE" Cutting Boards infringe claim 1 of the '311 patent and claim 1 of the '995 patent. (Compl. ¶ 10.)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

**I. Claim Construction**

Before the Court can determine if prior art renders a patent claim invalid, the Court must first construe the challenged claim. *See Power Mosfet Tech., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004). Claim construction resolves disputed meanings in a patent to clarify and explain what the claims cover. *See Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1382 (Fed. Cir. 2005). The construction of the claims at issue is a legal determination to be made by the court. *See id.* (*citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995)). Generally, the terms of a claim are given the ordinary and customary meaning that the terms would have to a person of ordinary skill in the art at the time of the filing date of the patent application. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). When interpreting an asserted claim, the court looks

3

first to intrinsic evidence: the words of the claims, the patent specification, and the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The claim language is the starting point for claim construction analysis because it frames and ultimately resolves all issues of claim interpretation. *See Robotic Vision Sys., Inc. v. View Eng'g Inc.*, 189 F.3d 1370, 1375 (Fed. Cir. 1997). In some cases, the "ordinary and customary" meaning of the claim language may be readily apparent, even to lay judges, and the court applies the widely accepted meaning of the commonly understood words. *See Phillips*, 415 F.3d at 1314. In such cases, a general purpose dictionary may be helpful. *See id.* In many cases, however, the court must proceed beyond the bare language of the claims and examine the patent specification. *See id.* at 1314-15. "The person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. The specification is usually dispositive; "it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In the specification, the patentee provides a written description of the invention that allows a person of ordinary skill in the art to make and use the invention. *See id*. at 1323. At times, the patentee uses the specification to "set forth an explicit definition for a claim term that could differ in scope from that which would be afforded by its ordinary meaning." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).

The court may also look to the patent's prosecution history. *See Phillips*, 415 F.3d at 1317. While the prosecution history often lacks the clarity of and is less useful than the specification, it may inform the court of the meaning of a claim term by illustrating how the inventor understood the invention as well as how the inventor may have limited the scope of the invention. *See id.* The

4

prosecution history is generally relevant if a particular interpretation of the claim was considered and specifically disclaimed during the prosecution of the patent. *See Schumer v. Lab. Comp. Sys.*, 308 F.3d 1304, 1313 (Fed. Cir. 2002).

Finally, a court may also consult "extrinsic evidence," such as dictionaries, treatises, and expert testimony, to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317-18. Generally, extrinsic evidence is "less reliable" than intrinsic evidence and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19. With respect to the use of dictionaries, technical or general, a court may consult such evidence "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1322-23.

## A. Disputed Terms in the '311 Patent

SiliconeZone's Motion for Summary Judgment challenges the validity of only the independent claim (claim 1) of the '311 Patent. The parties agree on the proper construction of many terms in the '311 Patent, so the Court will only construe the disputed terms of that claim. The language of claim 1 of the '311 Patent is as follows:

> A non-slip mat or pad consisting of a transparent plastic sheet having an upper surface and a lower surface, a coating of one or more inks forming a design on the lower surface and adapted to show through the plastic sheet to be seen through the top surface, and a non-slip coating adhering to the lower surface and inked coatings to form a mat or pad having a thickness in the range of 1.0 to 30.0 mils.

Memorandum, Ex. F(a), Patent No. 5,942,311, at 4:64-5:3.

The parties dispute the meaning of the following terms and phrases used in claim 1 of the '311 Patent: (1) "non-slip"; (2) "consisting of"; (3) "lower surface"; (4) "upper

surface"; and (5) "adapted to show through the plastic sheet to be seen through the top surface."

**1. "Non-slip"**

Microthin contends that "non-slip" means, "to reduce or prevent smooth sliding motion without being sticky to the touch." SiliconeZone claims that "non-slip" requires no construction but should be construed according to the term's plain and ordinary meaning in the context of the claim language.

Certainly, the plain and ordinary meaning of "non-slip" essentially includes something that reduces or prevents smooth sliding motion. Therefore, the dispute in the meaning of "non-slip" stems from a disagreement regarding whether the language of the patent requires a limitation of the term to surfaces that are not "sticky to the touch."

"[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1314-15. In the '311 Patent, the only additional limitation in claim 8 that depends from claim 1 is that "the non-slip surface is not sticky to the touch." Memorandum, Ex. F(a), Patent No. 5,942,311, at 6:4-5. If claim 1 were to be construed to only cover surfaces "not sticky to the touch," claim 8 would be completely superfluous. Therefore, this Court notes the presumption that claim 1 does not contain the limitation that the surface is non-slip without being sticky to the touch.

Based on the written specification, Microthin fails to overcome this presumption against the proposed limitation. Indeed, from the very beginning, even in the abstract, the '311 Patent speaks of a surface with a "tacky" characteristic, which is a term commonly understood to suggest something that is sticky to the touch. Memorandum, Ex. F(a), Patent No. 5,942,311, at [57];

Merriam-Webster's Collegiate Dictionary 1199 (10th ed. 1996) (defining "tacky" as "somewhat sticky to the touch"). The Court recognizes that the specification does mention that the non-slip characteristic is accomplished without being sticky to the touch in two separate places. Memorandum, Ex. F(a), Patent No. 5,942,311, at 1:6-10; 3:3-5. However, nothing in the '311 Patent specifically requires that the surface be non-sticky. This Court reads those phrases as simply describing a preferred embodiment of the patent rather than disclaiming surfaces that are sticky to the touch. Therefore, the presumption that claim 1 is broader than claim 8, which specifically claims the limitation of a surface not sticky to the touch, has not been rebutted. Therefore, "non-slip" means something that "reduces or prevents smooth sliding motion."

### 2. "Consisting of"

Microthin proposes that "consisting of" should be construed as a transitional phrase that "excludes any element, step, or ingredient not specified in the claim." SiliconeZone argues the term "consisting of" should be given its plain and ordinary meaning in the context of the claim language.

The term "consisting of" is a term of art in patent claim drafting that the Federal Circuit has consistently viewed as a "closed" transitional phrase that excludes "any elements, steps, or ingredients not specified in the claim." *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1245 (Fed. Cir. 2001). Therefore, the Court construes "consisting of" as it ordinarily is construed for transitional phrases in patent claims to mean that it "excludes any element, step, or ingredient not specified in the claim."

### 3. "Lower surface"

Microthin contends that "lower surface" should be construed to mean "surface of the plastic sheet that faces or contacts the surface on which the mat or pad rests, the underside or bottom." SiliconeZone argues that "lower surface" has a plain and ordinary meaning in the context of the patent that requires no special construction.

While the plain meaning of "lower surface" may seem clear to a person of ordinary skill in the art, Microthin's construction adds greater clarity in light of the specification. The specification actually speaks of different lower surfaces such as the lower surface of the main plastic sheet, the lower surface of an ink coating applied to the plastic sheet's lower surface, or, in some embodiments, the lower surface of the entire mat that includes a non-slip coating adhered to the bottom after the ink coating has been applied. *See* Memorandum, Ex. F(a), Patent No. 5,942,311, at 2:5-21. Which "lower surface" is actually the bottom depends upon which embodiment is used as disclosed in the specification. Because of the differing embodiments disclosed in the patent, a person of ordinary skill in the art would understand that "lower surface" speaks more generally of the bottom or underside of the mat that faces, if not actually contacts, the surface on which the mat rests. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999) ("Varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition"). Therefore, the Court construes "lower surface" to mean "surface of the plastic sheet that faces or contacts the surface on which the mat or pad rests, the underside or bottom."

### 4. "Upper surface"

Microthin urges the Court to construe "upper surface" to mean "surface of the plastic sheet that is opposite the lower surface and faces away from the surface on which the mat or pad rests, it is the surface that is contacted or acted upon by the user." SiliconeZone again argues that "upper surface" has a plain and ordinary meaning understandable to the ordinary person skilled in the art such that no construction is required.

Once "lower surface" has been construed, an ordinary person skilled in the art would understand "upper surface" to be the surface opposite the lower surface. However, nothing from the claim language or the specification requires reading into the claim the added limitation that the upper surface be "contacted or acted upon by the user," nor does this limitation add any clarity in construing "upper surface." Therefore, the Court construes "upper surface" to mean "surface of the plastic sheet that is opposite the lower surface and faces away from the surface on which the mat or pad rests."

### 5. "Coating of one or more inks forming a design on the lower surface and adapted to show through the plastic sheet to be seen through the top surface."

Microthin proposes that the phrase "coating of one or more inks forming a design on the lower surface and adapted to show through the plastic sheet to be seen through the top surface" should be construed to mean "coating of one or more inks forming a design that is reverse printed on the lower surface of the plastic sheet such that it can be seen through the plastic sheet on the upper surface and can be viewed correctly through the upper surface of the plastic." Here again, SiliconeZone argues that the phrase requires no special construction but should be construed according to its plain and ordinary meaning in the context of the claim language.

9

Microthin's proposed construction is only slightly different from the plain and ordinary meaning of the disputed phrase. The potentially confusing language in the phrase, as written in claim 1, is that the design is "adapted to show through the plastic sheet." Microthin's construction interprets this phrase to mean that the design is reverse-printed on the lower surface such that it may be viewed correctly through the upper surface. Microthin's construction is partially supported in the specification for the '311 Patent where it specifically speaks of a "reverse printing process" as the means for the mat to "contain suitable advertising, such as a multicolor logo, or a design, such as a picture, school emblem or logo, or other pictures or scenes, etc." Memorandum, Ex. F(a), Patent No. 5,942,311, at 3:45-54. However, the specification also discloses more general designs on the lower surface made through a series of screens for multiple colors that are visible through the upper surface of the mat. *See* Memorandum, Ex. F(a), Patent No. 5,942,311, at 3:40-44. Therefore, while the patent does mention "reverse printing" to achieve a "correctly viewed" picture or image, such a limitation is not required by the patent and the Court will not read such a limitation into the claim. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 992 (Fed. Cir. 1999) ("[J]ust as the preferred embodiment itself does not limit claim terms . . . mere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms."). Because there is a reasonably plain and ordinary meaning for the disputed phrase in the claim, and because Microthin's construction would effectively add a limitation to the claim, the Court construes the disputed phrase to mean exactly what the claim already says: "coating of one or more inks forming a design on the lower surface and adapted to show through the plastic sheet to be seen through the top surface."

**B. Disputed Terms in the '995 Patent**

In addition to the '311 Patent, SiliconeZone's Motion for Summary Judgment likewise challenged the validity of the claims in the '995 Patent. However, similar to the motion as applied to the '311 Patent, SiliconeZone challenges only the independent claim (claim 1) of the '995 Patent. As such, this Court will only construe the disputed terms of that claim. The language of claim 1 of the '995 Patent is as follows:

> A method for manufacturing a non-slip mat or pad, including the steps of providing a mat or pad formed of a plastic material, printing a design or logo to show on the upper surface of the mat, and applying a non-slip surface to the underside of the mat or pad with the total thickness of the mat or pad in the range of 1.0 to 30.0 mils.

Memorandum, Ex. F(b), Patent No. 5,997,995, at 5:4-9.

The parties dispute the meaning of the following terms and phrases used in the '995 Patent: (1) "non-slip"; (2) "printing a design or logo to show on the upper surface of the mat"; (3) "upper surface"; and (4) "underside."

**1. "Non-slip"**

Microthin argues that "non-slip" means something that "reduces or prevents smooth sliding motion without being sticky." Defendants argue that the term has a plain and ordinary meaning already and requires no construction.

As a preliminary observation, the '955 patent was a divisional application of the '311 Patent application and, therefore, has an identical written description. As such, the Court's construction of terms in the '311 Patent are likely to be applicable to the same terms in the '995 Patent, at least as far as the written description informs the analysis. However, the Court notes that the claims in

11

the '995 Patent are not identical and it is the claim language that this Court must ultimately construe. Specifically, the '311 Patent had a separate claim that specifically included the limitation of a non-sticky surface giving rise to the presumption that the independent claim of the '311 Patent was broader. No equivalent claim appears in the '995 Patent to invoke the same presumption but the outcome of the analysis is nevertheless the same. The written description does describe a surface that is not sticky to the touch. *See* Memorandum, Ex. F(b), Patent No. 5,997,995, at 1:7-10; 3:7-10. However, as discussed above, the mention of non-stick surfaces is a description of a preferred embodiment rather than a disclaimer against sticky surfaces because the description also speaks of a surface that is "tacky," which has a commonly understood meaning of sticky to the touch. *See* Memorandum, Ex. F(a), Patent No. 5,942,311, at 2:17-20, 4:57; Merriam-Webster's Collegiate Dictionary 1199 (10th ed. 1996) (defining "tacky" as "somewhat sticky to the touch"). The ordinary person with skill in the art would reasonably read the '995 Patent to be broad enough to teach both a sticky and non-sticky underside. Moreover, the plain and ordinary meaning of "non-slip," the term actually used in the claim, does not distinguish between sticky and non-sticky but merely suggests a surface that reduces or prevents smooth sliding motion. Because the claim language does not limit the invention to surfaces not sticky to the touch the Court will not read such a limitation into the claim. *See Bell Atlantic Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1270 (Fed. Cir. 2001) ("claims must be read in light of the specification [but] limitations from the specification may not be read into the claims"). Therefore, "non-slip" in claim 1 of the '995 Patent means something that "reduces or prevents smooth sliding motion."

### 2. "Printing a design or logo to show on the upper surface of the mat"

Microthin argues that "printing a design or logo to show on the upper surface of the mat" means "a design or logo reverse printed on the lower surface of the mat such that it can be seen through the mat on the upper surface and can be viewed correctly through the upper surface." SiliconeZone contends that the phrase requires no construction and urges the Court to accept the plain and ordinary meaning in the context of the claim language.

For the reasons discussed in relation to the '311 Patent above, the Court will not read into the claim that the image must be "reverse-printed" such that it may be "correctly viewed" through the upper surface. However, the written description at least requires the printing to be on the lower surface such that the image may be seen through the upper surface. Therefore, "printing a design or logo to show on the upper surface of the mat" means "printing a design or logo on the lower surface of the mat such that it can be seen through the mat on the upper surface."

### 3. "Upper surface"

Microthin urges the Court to construe "upper surface" to mean "surface of the mat that is opposite the underside and faces away from the surface on which the mat or pad rests, it is the surface that is contacted or acted upon by the users." SiliconeZone argues that "upper surface" should be construed according to its plain and ordinary meaning in the context of the claim language.

Because the '995 Patent has the same written description as the '311 Patent, and because both parties' proposed claim constructions are nearly identical to those submitted by the parties for the '311 Patent for "upper surface" discussed above, the Court will follow the same analysis here.

Therefore, "upper surface" means "surface of the mat that is opposite the underside and faces away from the surface on which the mat or pad rests."

### 4. "Underside"

Microthin proposes that "underside" means "the surface of the mat that faces or contacts the surface on which the mat or pad rests, the underside or bottom." SiliconeZone again argues that the term needs no construction but has a plain and ordinary meaning.

The term "underside" in the '995 Patent is the equivalent of "lower surface" in the '311 Patent, which has already been construed. Because of the identical written descriptions between the two patents and the identical proposed constructions by the parties for the '311 Patent and the '995 Patent, the Court will again follow the same reasoning that it did before. Accordingly, "underside" means "the surface of the mat that faces or contacts the surface on which the mat or pad rests, the underside or bottom."

## II. Invalidity Analysis

The Court now turns to whether the patent claims are invalid as anticipated under 35 U.S.C. §102. A patent's claimed subject matter is "anticipated" when it was previously known. *See Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008). To assert anticipation to invalidate a patent, a party must demonstrate identity of invention, which is a question of fact. *See Minnesota Mining & Mfg. Co. v. Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1565 (Fed. Cir. 1992). To show identity of invention, the party must show that each element of the claim at issue is present in a single prior art reference, either expressly or inherently, so as to place a person of ordinary skill in possession of the invention. *See Sanofi-Synthelabo*, 550 F.3d at 1082.

### A. Claim 1 of the '311 Patent (Count I)

Although the Brown Patent was issued after the '311 Patent was filed, the Brown Patent is a prior art reference because it has an earlier filing date than the '311 Patent. *See* 35 U.S.C. § 102(e). Moreover, each limitation of the '311 Patent is either expressly or inherently disclosed in the Brown Patent. The Brown Patent includes a clear thermoplastic sheet that corresponds to the transparent sheet in the '311 Patent. *See* Memorandum, Ex. B, Patent No. 5,738,325, at 3:25-27. The Brown Patent also includes reverse printing on the bottom surface that is visible through the top surface, which corresponds to the ink designs on the lower surface shown through the top surface in the '311 Patent. *See* Memorandum, Ex. B, Patent No. 5,738,325, at 3:30-32. Additionally, the Brown Patent discloses a light tack bottom surface to prevent the pad from moving, which corresponds to the non-slip lower surface of the '311 Patent intended to reduce or prevent smooth sliding motion. *See* Memorandum, Ex. B, Patent No. 5,738,325, at 3:33-39. Finally, the Brown Patent discloses a total combined thickness of the pad of about 15 mils, which is within the range of 1.0 to 30 mils claimed in the '311 Patent. *See* Memorandum, Ex. B, Patent No. 5,738,325, at 3:67-4:2.

Microthin's sole argument that the Brown Patent does not anticipate the '311 Patent is based on Microthin's proposed construction of "non-slip" to mean something that "reduces or prevents smooth sliding motion *without being sticky to the touch*." However, the Court's construction of the term "non-slip" discussed above did not limit the term to only non-sticky surfaces. Because the Court construed "non-slip" to mean all surfaces that reduce or prevent smooth sliding motion, no reasonable jury could find that the "non-slip coating adhering to the lower surface and inked coating" of the '311 Patent was not disclosed in the Brown Patent. Therefore, because every element of the '311 Patent is taught by the Brown Patent, the '311 Patent is invalid as being

anticipated under 35 U.S.C. §102.  Accordingly, SiliconeZone is entitled to judgment as a matter of law with respect to Count I of Microthin's infringement claim based on the invalidity of claim 1 of the '311 Patent.

### B. Claim 1 of the '995 Patent (Count II)

Again, the Brown Patent serves as a prior art reference that contains each limitation of claim 1 of the '995 Patent. As discussed above, the Brown Patent discloses a plastic sheet for the mat with printing on the lower surface that can be seen through the upper surface where the total thickness of the mat is within the range of 1.0 to 30.0 mils. *See* Memorandum, Ex. B, Patent No. 5,738,325, at 3:25-32, 67-4:2. Each of these disclosures correspond to a limitation in claim 1 of the '995 Patent. The only other limitation in claim 1 of the '995 Patent, and the only limitation that Microthin argues is not disclosed or suggested in the Brown Patent, relates to "applying a non-slip surface to the underside of the mat or pad." As with the '311 Patent, the Court construed the term "non-slip" to mean that which "reduces or prevents smooth sliding motion" and not merely that which is not sticky to the touch. Therefore, applying the light tack removable adhesive to the bottom surface of the mat as taught in the Brown Patent, even though sticky to the touch, sufficiently corresponds to the element of a non-slip lower surface in claim 1 of the '995 Patent that no reasonable jury would find otherwise. *See* Memorandum, Ex. B, Patent No. 5,738,325, at 3:33-39. Accordingly, Defendants are entitled to summary judgment as to the invalidity of claim 1 of the '995 Patent.

### **CONCLUSION AND ORDER**

For the reasons stated, SiliconeZone's Motion for Summary Judgment is granted. So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   May 6, 2009